The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Timothy M. Reeves v. the Department of Correction et al. Appeal Number 192089 and Timothy M. Reeves v. the Department of Correction et al. Appeal Number 201433. Good morning, Attorney O'Donnell. Please proceed. Thank you. Good morning, Your Honors. May it please the Court, Ted O'Donnell for the with serious medical needs and his condition is very poor. The Commissioner has recognized that and has granted him a medical parole. But we are asking you today to find that the District Court erred in finding Stephanie Collins to be deliberately indifferent and we're asking that you vacate the order that had issued as being violative of the Prison Litigation Reform Act. Mr. O'Donnell, before you proceed, we would just like to know about the present status of the case and that involves two different things. The first is the meaning of medical parole and the second is the status of the request to non-DOC hospitals to provide treatment for the plaintiff. I had understood as to the second that DOC had put in the record that it had asked a number of medical facilities whether they were willing to provide such treatment and that the answer was that none of them were. Is that the present status? And then please go back to what medical parole amounts to. Sure. I'm sorry. In answering the first question, could you also give us an update on what's going on with the possible Connecticut placement? Yes, those are both inextricably entwined. So basically, the DOC, through its medical contractual provider, did not succeed in locating a facility in which to place Mr. Reeves as was ordered by the court. So that remained the is that because it would require 24-7 guards at a private facility? No, that was no part of it, Your Honor. It was the receiving facilities, or the potentially receiving facilities, indicated that they could not accept him for admission for their own reasons. So there was an outreach effort, as was indicated in our 60B motion, the second filed one, that at that time each one of the 45 facilities that were contacted each indicated, sorry, no, we can't accept this individual as an admission. And that remains the case. Now, on the medical parole piece, this is important. So fairly recent new law, which is a great thing, allows now for individuals that really don't need a prison-type environment to apply for a release from the prison environment and to be placed in an appropriate setting. In Mr. Reeves's case, for an exact. So there's a facility in Connecticut that's willing to receive him as an admission. And so it's wonderful news. There's hope that there'll be an endpoint at some point in this litigation, because Mr. Reeves certainly doesn't require a prison-type setting in his condition. I'm sorry. When Judge Thompson asked you about the Connecticut facility, your answer seemed to go to the question of institutions rejecting him. However, you now say that under medical parole, there may be a Connecticut facility willing to accept him. Do I understand that correctly? That's exactly right, Your Honor. Okay. So where does that process stand? Has he been accepted? Have provisions been made to transfer him there? What is the status of that? Sure. So the facility requires that there be an insurance payment option in place. It's outside the record as to one obstacle that's presented as to his being placed there. Do you have a comment on that? Yes. So Mr. Reeves remains in DOC custody for reasons beyond the DOC's ability to cure. So this case is not moot currently. The placement to which he's been potentially accepted does not have a spinal cord injury specialist on staff, so his placement there would actually violate the existing court order. And even if Mr. Reeves were placed at this Connecticut facility on medical parole, if for any reason the parole gets violated, then he'd potentially be returned to the Department of Correction, which would again potentially hold us in contempt of the court's order because now he'd be back with the Department of Correction. So the case is not moot, Your Honor. I'm sorry. We will decide whether the case is moot. I was asking factual questions and I don't have an adequate answer yet. What would be the reason to transfer him to this Connecticut facility? And does the plaintiff oppose this transfer? Well, that's unclear, Your Honor. Through an earlier part of the litigation, Mr. Reeves received a monetary settlement from the prior contractor and the amount of funds that he has makes him ineligible for mass health. However, if he were to secure the funds in a special needs trust, he would then be eligible for mass health and there would be a public insurance option to fund his stay at the Connecticut facility. To date, he seems disinclined to do that and so he's ineligible for placement there for that reason. Okay, let me go back. Why are you considering this placement? Well, he applied for a medical parole and the commissioner determined that he's a suitable candidate to be released from a prison setting. However, there needs to be a place for him to go where he can be properly cared for with all his medical needs. And so that's the one place that's able to be found that's willing to consider accepting him as an admission. There's no other place that we've been able to find and so because of his needs, he requires placement in that place. I don't understand. Why can't he do a spin down from the funds that he received, the settlement proceeds, and spin down to the point where he has no assets and then he would be eligible? That would be his option, Your Honor. He certainly could. Have you all talked about this at all? Yes, Your Honor, but it's all contingent on Mr. Reeves's willingness to either go there and expend his own funds or place his funds in a special needs trust to make him eligible for mass health and a placement there. All right. Thank you. We will obviously have questions for your opponent about this. If you would turn back to the merits of your argument, if you don't mind reordering your argument rather than addressing the Eighth Amendment issue, could you address the remedial issue? As I understood it, you had two strands to your argument. The first was the remedy violated general equitable principles and the second was for a variety of reasons, the relief violated the statute passed by Congress. Okay? Yes, Your Honor. Thank you. Most importantly, the violation of the Prison Litigation Reform Act is it provides that no court shall enter a prisoner release order unless the court had previously entered an order for less intrusive relief that has failed to remedy whatever the deficiency perceived was and the defendant is given a fair amount of time to address whatever order is the PLRA provides. How is that argument impacted by the medical parole? They're entirely two separate things, Your Honor. That's not an answer. You're saying that there is no impact? No, because Mr. Reeves remains in DOC custody. He has not been released from custody. He remains with us. The second violation of the PLRA by the court's order is it says the court shall not order any prospective relief that requires a government official to violate state law. The commissioner is duty-bound by mass state law to retain Mr. Reeves in custody for the duration of his sentence. There was no evidence that this order was required was the only unnecessary thing to be done to address whatever deficiency was perceived. Thirdly, the PLRA requires that prior to issuance of a prisoner release order, the matter will be referred to a three-judge panel, and that wasn't done here as well. Isn't there an argument made by Mr. Reeves' counsel that the release ordered by the court is not a release within the meaning of the PLRA? Your Honor, the order requires that Mr. Reeves be placed in a non-DOC facility, and there's no end point, and so it really is a prisoner release order. There's no other way to construe it. With respect to the 60B denials, as I mentioned earlier, there's no end point because Mr. Reeves is never going to get better or at least become incapacitated. I'm not sure I understand your question, Your Honor. He will always have some kind of incapacitation, is that correct? Yes, that's why he was granted the medical parole. That was part of the reasoning, and so as a separate matter, should he become medically paroled, with the court's order still in effect. If he had to go to a hospital, how was that any different? Well, there is a provision to temporarily place an inmate at a hospital for whatever necessary care might be needed, but in this case, the court's order is not temporary. There's no end point, and it's a continuing obligation to keep him away from a DOC facility, and so it is a release order. By the time of the second 60B motion, the district court abused its discretion upon learning that each one of the 45 Massachusetts facilities declined to accept Mr. Reeves as an admission, and so for that reason... Counsel, you said each of these Massachusetts facilities. I thought it also included a Connecticut facility. There is currently the Farran, Connecticut facility that has indicated their willingness to accept Mr. Reeves on medical parole. But they do not provide this specialized spinal cord treatment, is that correct? That's correct, so placement there would violate the existing court order, and we're asking that it be vacated for that reason. They don't have a spinal cord professional on staff, but does that mean that an outside person could not come in to treat him? They don't have any associates? Yes, I'm sure something like that could be worked out, but the point is it wouldn't comply with the court's order. Last, if I may have a moment to address deliberate indifference, Your Honors. I know I'm almost out of time. May I? Yeah, go ahead, go ahead. Thank you. So the biggest issue to raise here is the subjective part of the analysis of Farmer. The court in its findings made two errors with respect to Stephanie Collins. It found that she had the ability to move staff around, and she misattributed a quote to her as being whether she follows recommendations of specialists, and the court found that she not all the time. The reason I say those are important is they go to the mental state of Stephanie Collins, which is what really has to be grappled with in making a finding of deliberate indifference. Nowhere in the record does it say that Stephanie Collins had the ability to move staff around, so that was an erroneous finding, and she never uttered those words that she doesn't follow recommendations of specialists all the time. She did not say that. A different witness had responded similarly to the question, but Dr. Maria Angelis, the other witness, had followed that up by saying she follows those recommendations that would benefit the patient or be for their well-being, and I think the court misattributed Stephanie Collins' state of mind and unwillingness to take maybe reasonable measures that might otherwise be taken when she didn't have the authority to move staff around, and she did not have that outlook. For you, on the merits, I noticed the district court specifically found that Dr. Cho recommended a urodynamic study, and he criticized, therefore, your client for not having followed that recommendation, and your brief makes absolutely no response to that. He found that Dr. Cho recommended a gastroenterology evaluation and that none has occurred. Again, your brief makes no response to that, and then Dr. Morse testified that in treating SCI, a specialist is a critical component of care, and he's not receiving specialized care, and your brief makes no response to that. For those three reasons alone, wouldn't we be justified in finding that there has been an Eighth Amendment violation with specific recommendations of needed care and no explanation for why it's not being provided? No, Your Honor. There were multiple recommendations from Dr. Stephanie Cho who remained in the case as a consultant, and that's evident in the record. She made a number of recommendations that were complied with. Mr. Reeves was offered the use of a recreational gurney with a foam base. He was offered the use of a recliner chair, offered sponge baths, offered to be turned every two hours on his ear mattress. He was offered a menu that was developed by a dietician with a high-fiber diet. Okay, so there's no violation on those, but what about the recommendations that were not followed? It is an established fact that those two recommendations were not followed. There was no urodynamic study, and there was no neurogenic bowel study in the record, and so those are established facts. That's time. Yeah, good note. Go ahead and finish answering. But the overwhelming import of all the other evidence was multiple, multiple offers of all types of medical care. Absolutely no evidence of Stephanie Collins having a state of mind akin to criminal recklessness regarding Mr. Reeves' medical care, and so we ask you to reverse the finding of deliberate indifference. Thank you. Okay, thank you, counsel. Well, can I just ask one more question? Go ahead. So, I mean, so your response to Judge Kea'ida's question is that Ms. Collins made a determination of her own that those treatments were not necessary? No, I don't believe that's in the record, Your Honor, but it is. Those two studies, there's no proof that those studies were done. The question is why? That does not appear in the record, and there's nothing more really in terms of the record that speaks to the why on that. As I understood your argument, it was any number of other recommendations were followed, and in any event, there is no evidence of the subjective intent that was required regardless of these two facts. Yes. Is that what you're arguing? That's exactly what I'm arguing, Okay. Any further questions? No. Thank you, counsel. Good morning. May it please the court, my name is Lauren Pettit, and I represent the plaintiff and many other disabilities. Counsel, believe me, we know the record in this case. Could you go directly to the series of questions that was asked about status? First, do you dispute that more than 45 agencies, when DOC inquired as to whether they were willing to I have no basis to dispute that, Your Honor. Okay, then moving to the medical parole issue and the Connecticut facility, could you please tell us your point of view on that, and in the course of that, answer some of the questions we asked your opponent? Yes, Your Honor. We think it's critical that despite the fact that the department was unable to find a placement, a placement has indeed been found in Connecticut. They have formally accepted Mr. Reeves for care. His medical parole has been granted. That parole has been transferred to Connecticut, and as Mr. O'Donnell mentioned, there are only the ministerial requirements of setting up trust for the settlement funds. I'm sorry, Counsel. There was a suggestion that they do not have a spinal cord specialist on staff, and there was a suggestion that your client has not been willing to make it financially possible for the Connecticut facility to receive insurance payments. So those, I'd ask you to address both of those things, and then thirdly, the bottom line question is, would this placement in the Connecticut facility, in your view, resolve this matter? Okay. So regarding the availability of specialty spinal cord injury care at the Connecticut facility, it's correct that they do not have a spinal cord injury specialist on staff. They do have a physiatrist on staff, which is a doctor of physical medicine, which is specialists are physiatrists. This particular physiatrist is not a spinal cord injury care specialist. However, there is a spinal cord injury care specialty hospital within 15 minutes from the facility, Gaylord Hospital, and they have indicated willingness to treat Mr. Reeves in an outpatient basis. To the point that Mr. O'Donnell raised regarding that setup technically violating the court's order, Judge Hillman has remained very involved in the process of placing Mr. Reeves and obtaining medical parole. He's well aware of what the status is and has already indicated his willingness to amend the facility with arrangements like this. I'm sorry, indicated his willingness. We have nothing in the record. It would have been easy for there to be a modification of the order, but it has not been done. What is the basis for your statement to us? The transcript of the hearing in which Judge O'Donnell was asked to amend the court's record, it was a hearing on October 25th of last year. The reason that the amendment has not been finalized is because of the difficulty that has been encountered by both sides in finalizing a placement for Mr. Reeves. The court has been waiting to know what the final plan is before amending the order or determining if he can amend the order to allow for that plan to occur. Had he amended for each potential plan that was under consideration all along, there would have been quite a few amendments. What about the money situation? I'm sorry. Yes. Thank you, Judge Thompson. Again, Mr. O'Donnell is correct that there are financial arrangements that need to be made regarding the monetary settlement from the medical contractor, and Mr. Reeves essentially has two options. He can either wait until, as Judge Thompson suggested, he has no money left and becomes financially eligible for public assistance, or he can put the money in a special needs trust. Those choices have been discussed with Mr. Reeves throughout the entire process. So, is there no decision because he hasn't made one? I'm trying to figure out what the holdup is. Excuse me. Part of the holdup has been, again, not knowing where he was going to be placed. Was it going to be in Massachusetts? Was it going to be in Connecticut? Hasn't this Connecticut placement been available to him since March? The Connecticut placement accepted him in January. The medical parole was granted in March. So, what's the holdup? There has been an unfortunate holdup, Your Honor, and you know, a number of issues have contributed to that holdup. It's my plan to meet with Mr. Reeves this afternoon and my understanding that he may now be willing to finalize a special needs trust for that money. Counsel, the message that we're being given is, if the details can be worked out, it appears that this Connecticut placement would satisfy your concerns. That leads me to the question of whether we should just remand this matter to the district court to provide whatever assistance would be helpful to getting this matter resolved on the terms that your client seems, from your representations, he would be willing to accept this placement if the placement can be resolved. Well, what do you think about that idea? Well, while I think the existence of a placement for Mr. Reeves to be transferred to does resolve the defendant's claims of impossibility, I'm in agreement with Mr. O'Donnell that it does not move the findings on deliberate indifference, both because he currently still is in the Department of Correction and because, should he be returned from medical parole for a violation of any type, all of these same issues would remain. Yes, but in that case, it would be a different situation in front of this court and a far different factual record. You lost your damages claim before the jury. That's gone. The only thing that is left is the remedial order and it looks, to me at least, I will not speak for my colleagues, that you may be able to work out the question of remedy without this court having to make unnecessary law and, indeed, it would be the fastest way of getting relief to your client. Any comments? I agree that the remedy appears to be well on its way to being resolved and that that would mean that the court does not need to make any rulings on the defendant's claims regarding the remedy. So, what would that leave for us then? It would leave the deliberate indifference. Why? That has to be attached to a remedy to be something that we can decide. Money is out the door. So, what remedy are you seeking? We're seeking the remedy to the violations of Mr. Reeve's constitutional right to adequate medical care, which if the court determines that it's moot because of his transfer, then it's moot. But it's my position that because of the potential for Mr. Reeves to be brought back into the department's custody where all of the same issues, I believe, would, in fact, face both Mr. Reeves and the department, the court's findings on those matters should stand. We've got you here now, so let me give you a chance to address my concerns about the current remedy as it stands. Perhaps you can allay them. There do seem to be instances where the DOC received a recommendation and did not follow it, and then they've given us no explanation. But there are others that it looks like they may have followed it. More importantly, it seems that the court jumped from – it acted way too soon to order something like a release. Shouldn't the court have first said do A, B, and C, and then if they did not do A, B, and C, proceeded perhaps to contempt? But it seems that the court never specifically ordered the DOC to do all these things. It just jumped right to release him so that someone else does, and that's very concerning. Yes, as to the recommendations that are claimed to have been recommended, the DOC never chose recommendation that they not give Mr. Reeves showers and followed some other recommendations. But the record in this case and the evidence before Judge Hillman was incredibly detailed and focused on so many different aspects of Mr. Reeves' care. Excuse me. But let's say you're right. The purpose of this question, let's assume you're right that there are 10 things that they should have done that the doctors wanted to do that they didn't do. My question is simply as a matter of equity, shouldn't the first step taken by the court have been to issue an order to do those 10 things? And then if they didn't do them, then up the ante. I understand your question. The judge's preliminary injunction order, nearly 70 pages in great detail, described the failings of the Department of Corrections Medical Care for Mr. Reeves. Counsel, if I may, the preliminary injunction is not in front of us. Well, but that's a fair, I think that, I think my problem with the preliminary injunction, because that would be an example of taking an interim step, which is I think what you're trying to say before getting to final. But the preliminary injunction didn't order them to do these things that we're talking about. It did not specifically give them a list of items to do, but it made quite clear that the court found that Mr. Reeves was likely to be successful in proving that the department failed in all of the ways that he described in the preliminary injunction. He then appointed a monitor who was to monitor the defendants, the medical defendants then stated commitment to improving the care in those ways. And the court found... Was the monitor given any specific directive? By the court? The only directive that the monitor was given was the process by which he was to receive the information and a requirement for monthly reports. So that both sides provided records and status reports to the monitor, and the monitor then reported monthly to the court. The monitor noted numerous failings on the department's behalf, and the court found at trial that the care had not been improved in so many ways that he found that they are in fact slowly killing my client. Counsel, if I may, and let me just say I'm having technology problems of seeing my colleagues, although I now see Judge Thompson. If there is a finding by this court for the various reasons stated that there was no Eighth Amendment violation, then your remedial order disappears entirely and you are back to scratch when at the point you could voluntarily agree that you are going back to the district court to work out this modification of the court order and this placement. It is true then that if your client ends up violating the terms of medical parole, and he would have every incentive not to do that, that he then would be returned to the Department of Corrections. It does not follow at that point that every issue you have raised thus far is part of that case, which would start with your having to show that the violation of the terms of medical parole and the return to custody is somehow a violation of law. So again, this court is trying to find a practical solution to this problem, which does not involve unnecessary making of law, which we do not need to make. So I'm going to put the question to you again. You can, of course, on behalf of your client, continue to argue that the case is not moot and you should be affirmed, or you can take an alternate path. So may I have your view? Your Honor, I believe that the defendants have not shown that any of Judge Hillman's findings are clearly erroneous. It is our intention to work, and what we've been doing, to work to affect compliance with the judge's order. And it is, you know, it's my hope that that will soon happen. In the absence of a remand order, are both parties nonetheless proceeding to make it happen such that you should give us a status report in, say, 45 days as to whether you have resolved these issues? I think that would be appropriate. Certainly the plaintiffs working to make the transfer happen, and I believe the department is willing to cooperate. Well, I would ask, after you have finished, I will ask your opponent about that option. Okay? Thank you. I must say, too, the questions about, my questions have been about the appropriateness of jumping to the particular remedy sooner. They were not meant to imply that, as a result of some very impressive amount of effort on behalf of Mr. Reeves, you may well have established that the care provided was inadequate, and repeatedly so across a broad range of areas. But I think that's a separate issue from whether the particular remedy being ordered should stand. I think that Judge Hillman came to the remedy of transfer not too quickly, and he came to that partly because the violations are so extensive and cover such a broad range of Mr. Reeves' care and of what happens inside the prison. So, in fact, the order to transfer Mr. Reeves is probably less intrusive than any injunction that would have directed what was required to comply with the constitutional standard of care were Mr. Reeves to stay in the prison. And because the department has shown over such a long time that they're unwilling to provide appropriate care to Mr. Reeves. Okay, any further questions of counsel? No. No. As I cannot see my colleagues, they will have to speak up. Judge Kayada? Nothing. Okay, thank you very much, counsel. We would like to see counsel for the Department of Corrections again, please. Thank you. All right, Mr. O'Donnell, you are not to argue the merits again. You have heard your opponent say that a status report in 45 days to this court would be acceptable to them while you and they try to work this matter out. Is it acceptable to the department? Yes. All right, thank you. Nothing further, Your Honor? No. That concludes the argument in this case. Attorneys O'Donnell and Pettit, you should disconnect from the meeting at this time.